United States District Court
Southern District of Texas
**ENTERED**
July 07, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Annajo Lewis, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. H-19-2380 |
| | § | |
| Andrew Saul, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff Annajo Lewis appeals the Social Security Administration (SSA) Commissioner's final decision denying her application for social security benefits. (D.E. 1.) Pending before the court are Plaintiff's Motion for Summary Judgment (D.E. 15) and Defendant's Cross-Motion for Summary Judgment. (D.E. 17.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

## 1. Procedural Posture

Lewis applied for disability insurance benefits on November 3, 2016. (Tr. 338–50.) In her application, Lewis stated that she was born in 1969. (Tr. 338, 345.) She claimed that she was disabled as of March 28, 2014, due to fibromyalgia, chronic fatigue syndrome, restless leg syndrome, irritable bowel syndrome (IBS), sleep apnea, Raynaud's disease, gastroesophageal reflux disease (GERD),

depression, anxiety, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (Tr. 345, 365.) Lewis worked as a patient care assistant at a hospital, from January 1992 to December 2008, and as a temporary laborer at a staffing agency, from February 2010 to April 2010. (Tr. 366.)

The SSA denied Lewis's application at the initial level on March 16, 2017, and at the reconsideration level on May 31, 2017. (Tr. 175–87, 209–26.) Lewis requested a hearing.

Administrative Law Judge (ALJ) Thomas J. Helget held a hearing on June 7, 2018, in Houston, Texas. (Tr. 90–138.) Lewis filed a post-hearing brief, attaching additional evidence. (Tr. 435–57.) The ALJ issued a decision finding that Lewis was not disabled through September 5, 2018. (Tr. 36–52.)

Lewis requested that the Appeals Council review the ALJ's decision. Lewis submitted a brief entitled "Addendum to the Request for Review," along with additional medical records covering the period between September 25, 2018, and October 9, 2018. (Tr. 2, 17–35. 458–64.) Lewis also submitted two medical source statements to the Appeals Council: one from Michael Berno, M.D., dated August 13, 2018, and another from Gordon D. Garcia, M.D., dated September 27, 2018. (Tr. 2, 8–13, 58.) The Appeals Council denied Lewis's request for review on April 22, 2019, finding that the additional evidence either was outside the relevant

disability period or did not show a reasonable probability that it would change the outcome of the decision. (D.E. 12-2 at 1, Tr. 157–60.)

Lewis filed her complaint in federal court on July 2, 2019, to appeal the Commissioner's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five–Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2016). A person who is

working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments is severe. 20 C.F.R. § 404.1520(c) (2016). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2016); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2016) (the "Listings"). If all the criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2016).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2016). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)). "[T]he

4

determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform their past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2016). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2016).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. The ALJ must take notice of the DOT and other sources of occupational information listed in 20 C.F.R. § 404.1566 (2016). The ALJ must also resolve any discrepancy between the VE's testimony and the DOT. *See* SSR 00-4p, 2000 WL 1898704, *2 ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."). If the claimant can perform other work available in the national economy, the claimant is not disabled.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and

whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court is required to examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### C. Hearing

Lewis was represented by counsel at the hearing. (Tr. 92.) The ALJ heard testimony from Lewis and a Vocational Expert (VE). (Tr. 93–137.) Lewis testified that she last worked for a staffing agency in 2010. (Tr. 95.) Before that, she worked for a hospital from 1999 to 2008, in various assistant roles. (Tr. 95–98.) She left that job to take care of her ailing mother. (Tr. 98.) Lewis testified about her symptoms, medications, and other treatments. (Tr. 103–107, 111–28.) She testified that because of her neuropathy and Raynaud's disease, her hands did not acclimate well to temperature changes. (Tr. 114–16.) Her hands would ache, stiffen, and get extremely cold, limiting her ability to use her hands. *Id.* She testified that she received medical treatment and wore gloves to warm her hands. (Tr. 111–12, 114–16.)

Lewis testified that she lived with her father, fiancé, and son in a fourplex house. (Tr. 93–94.) She mostly stayed at home other than to go to the grocery store

or take her son to counseling appointments. (Tr. 106–108.) She testified about her activities of daily living, which included doing chores around the house and taking care of her personal hygiene. (Tr. 109–12, 125–31.)

The ALJ asked the VE what work someone with Lewis's educational background and age could do if they had the RFC to work at the "light" exertional level with additional limitations, including:

- occasional climbing of ramps or stairs;
- no climbing of ladders, ropes or scaffolds;
- occasional balancing, stooping, kneeling, crouching, and crawling;
- occasional overhead reaching;
- no work at unprotected heights;
- no dangerous moving machinery or hazards; no driving;
- no walking on uneven surfaces;
- frequent fine fingering and gross handling bilaterally;
- only simple, routine, repetitive tasks, not performed in the fast-paced production environment, involving only simple work-related decisions;
- relatively few workplace changes in the routine work setting; and
- only occasional interaction with the general public.

(Tr. 131–32.)

The VE testified that someone with the ALJ's hypothetical RFC could work as an office helper, mail clerk, and office cleaner. (Tr. 132.) The VE testified that her testimony did not conflict with the Dictionary of Occupational Titles (DOT) and that her testimony was based on her experience. (Tr. 133–34.)

The ALJ issued a decision on September 5, 2018, finding Lewis not disabled. (Tr. 36.)

### 3. Analysis

#### A. The ALJ's five-step sequential analysis followed the correct legal rules, and substantial evidence supports his decision.

##### (1) Step One

At step one, the ALJ correctly found that Lewis had not engaged in substantial gainful activity since the alleged disability onset date of March 28, 2014, through when she was last insured on June 30, 2015. (Tr. 41.) This finding is undisputed.

##### (2) Step Two

At step two, the ALJ found that Lewis had the following severe impairments: obesity; fibromyalgia; peripheral neuropathy; Raynaud's disease; major depression; anxiety disorder; history of ADHD; and history of PTSD. (Tr. 42.) The ALJ found that Lewis's IBS, sleep apnea, GERD, restless leg syndrome, and chronic fatigue syndrome were not severe because no medical evidence showed that those impairments caused more than slight abnormalities that had a minimal effect on Lewis's ability to work. *Id.* The ALJ relied on medical records dated between 2014 and 2018 to support his findings. (Tr. 42, 482–533, 543–96, 638–709, 723–29.)

Lewis does not dispute the ALJ's finding at step two. The ALJ's finding is supported by substantial evidence.

(3) Step Three

At step three, the ALJ found that Lewis's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in the Listings. (Tr. 42–45.)

The ALJ appropriately considered Listings 11.14 (peripheral neuropathy) and 14.04 (Raynaud's disease) for Lewis's physical impairments. Although obesity and fibromyalgia are not one of the Listed impairments, the ALJ considered them according to relevant regulations and policy. (Tr. 42.) The ALJ also considered Listings 12.04 (affective disorders), 12.06 (anxiety), 12.11 (neurodevelopmental disorders), and 12.15 (stressor-related disorders) for Lewis's mental impairments. (Tr. 43–45.)

Lewis does not dispute the ALJ's finding at step three. The ALJ's finding is supported by substantial evidence.

(4) RFC

Before turning to the final two steps of the analysis, the ALJ made the following RFC assessment:

> [The claimant can] lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead bilaterally. The claimant is limited to frequent gross handling and fine fingering bilaterally. The claimant cannot work at unprotected heights, around dangerous moving machinery, or

around hazards, nor can she drive a motor vehicle, or work on uneven surfaces. The claimant is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes in a routine work setting. The claimant is limited to only occasional interaction with the general public.

(Tr. 45–46.)

In reaching his findings on Lewis's physical RFC, the ALJ considered Lewis's testimony and her medical records from 2014 to 2018. (Tr. 45–50, 465–596, 604–730.) The ALJ relied on physical examination results, which showed that although Lewis was obese, her health indicators were normal during the time she received medical treatment. (Tr. 47, 556, 723.) Lewis could rise from a seated position unassisted. (Tr. 493, 556.)

The ALJ specifically considered Lewis's symptoms of Raynaud's disease and neuropathy and their impact on her fine motor skills. (Tr. 46–47.) Medical testing of her bones, muscles, and nerves—including an Electromyogram and Nerve Conduction Study (EMG/NCS)—were normal, although treatment records indicated that Lewis had some reduced sensory function up to her wrists and ankles and had a limited range of motion in her left shoulder. (Tr. 47, 112, 493, 593, 604, 681, 613.) Examinations returned normal results for Lewis's lower extremities, cardiovascular system, and respiratory system. (Tr. 575, 727.) Lewis denied having back pain, joint pain, or leg pain on March 12, 2018. (Tr. 727.)

The ALJ also considered the opinions of Lewis's treating physician, John Kirkwood, D.O, and the State Agency staff's findings at the initial and reconsideration levels. The ALJ did not fully adopt these opinions because they were inconsistent with the evidence in the record.

The ALJ's physical RFC determination is supported by substantial evidence.

Lewis argues that her physical RFC should have included further limitations to accommodate the numbness and tingling in her hands and her inability to adapt to temperature changes. (D.E. 15 at 5–6.) Lewis points to her own testimony during the hearing as evidence to support her argument. (D.E. 15 at 5–6; Tr. 111–12, 114–16.) She suggests that the RFC should include break periods during which she can warm her hands. (D.E. 15 at 6.)

Lewis is asking this court to re-weigh the evidence. "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461. As outlined above, there is ample evidence to support the ALJ's RFC findings. The ALJ considered all the evidence, including Lewis's testimony, and concluded "[t]he claimant's grossly normal physical exams demonstrate that she retains a high degree of functioning physically." (Tr. 47.) That conclusion and the RFC finding are both supported by substantial evidence.

To assess Lewis's mental RFC, the ALJ reviewed Lewis's mental health treatment records from 2016 to 2018. Mental status examinations returned normal

11

results. (Tr. 612, 618, 624, 630.) Her conditions improved with medication. (Tr. 616.) Even when she reported increased anxiety and depression, an examination showed that she was still focusing well. (Tr. 619.)

As opinion evidence, the ALJ considered Doctor Sharon Swanson's consultative clinical interview and mental status exam. (Tr. 48, 597–603.) The results of this examination were largely normal. (Tr. 601–02.) Dr. Swanson concluded that Lewis had a "fair to moderate" prognosis for maintaining employment. (Tr. 602.)

The ALJ also considered the State Agency's previous findings at the reconsideration level and found that Lewis's mental impairments were greater than what the State Agency determined. The ALJ based that conclusion on his own review of additional records that were not made available to the Agency's staff at the reconsideration level. (Tr. 49–50.)

The ALJ's mental RFC determination is supported by substantial evidence.

Lewis argues that the ALJ's finding of moderate limitations in adapting and managing herself were not fully reflected in her mental RFC. She argues that the RFC assessment should have included limitations to account for her diminished ability to respond to demands and adapt to changes. (D.E. 15 at 7.) In addition, Lewis argues that her RFC should have included more limitations relating to her "difficulty with extended concentration and maintaining attendance/pace in the workplace." *Id.*

The court disagrees. The RFC includes limitations to accommodate all of Lewis's mental impairments. The ALJ limited her RFC to "simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few [work-place] changes in a routine work setting." (Tr. 46.) The ALJ considered the treatment records that showed improvements from medications as well as mental status exams that returned normal results. (Tr. 47, 612, 616, 618–19, 630.) Again, she had a "fair to moderate" prognosis for maintaining employment. (Tr. 601–02.)

Lewis argues that the ALJ ignored the State Agency medical consultants' findings at the initial and reconsideration levels. Specifically, Lewis argues that the ALJ should have considered the Agency consultants' findings that Lewis "will have difficulty with extended concentration and maintaining attendance/pace in the workplace [due to] psychiatric symptoms and chronic pain." (D.E. 15 at 7; Tr. 205, 223.) The ALJ expressly considered the State Agency consultants' findings and found that, overall, Lewis's mental impairments were even *greater* than what the consultants found at the reconsideration level. (Tr. 49–50.) The ALJ included limitations in the RFC to account for Lewis's mental impairments.

(5) Step Four

At step four, the ALJ relied on the VE's testimony and found that Lewis could not perform any past relevant work. (Tr. 50, 99–101, 131–37.) Substantial evidence supports the ALJ's finding at step four, which is undisputed.

(6) Step Five

At step five, the ALJ found that Lewis could find other work existing in significant numbers in the national economy, as an office cleaner, office helper, or mail clerk. (Tr. 50–51.) To support this determination, the ALJ considered the VE's testimony, which was based on the ALJ's hypothetical questions incorporating the ALJ's final RFC assessment, as well as Lewis's age, education, and work experience. (Tr. 50–51, 99–101, 131–37.) The ALJ also considered Lewis's post-hearing brief. (Tr. 48, 435–57.) Among the arguments raised in the brief were that the VE's testimony conflicted with the DOT and that the ALJ should consider job descriptions found in other sources of occupational information including the O*Net. (Tr. 435–39.) The ALJ rejected the arguments raised in the post-hearing brief. (Tr. 48–49.) The ALJ found that the VE's testimony was consistent with the DOT and based on the VE's own expert experience. (Tr. 51.)

Lewis now argues that the hypothetical posed to the ALJ was defective because it was based on an RFC finding that is not supported by substantial evidence. (D.E. 15 at 11.) She therefore asserts that the ALJ's reliance on the VE's testimony in response to the hypothetical was error. As discussed above, the RFC is supported

by substantial evidence. Therefore, the hypothetical was proper, and the ALJ was entitled to rely on the VE's answer.

Lewis next argues that the ALJ's finding that Lewis could perform other work was not supported by substantial evidence because all three jobs identified by the VE require greater functional capacity than her RFC. (D.E. 15 at 11–13.) Lewis did not question the VE about the issues she now raises on appeal. Regardless, the court addresses Lewis's arguments as to each job in turn and finds no error in the ALJ's reliance on the VE's testimony.

(a) Office cleaner

Lewis argues that the job as an office cleaner requires her to spend more time walking or standing than what her RFC allows. Lewis argues that the job falls under the Standard Occupational Classification (SOC)[1] code of 37–2012 ("maids and housekeeping cleaners"), and that workers in that category spend, on average, more than six hours standing or walking, which exceeds her RFC. (D.E. 15 at 12–13.) As additional evidence, Lewis offers certain YouTube videos and a journal article. (D.E. 15 at 12; Tr. 461–62.) Lewis does not argue that the DOT's definition of the job requires standing or walking more than six hours.

---

[1] "The Standard Occupational Classification system is used by federal statistical agencies to classify workers into occupation categories for the purpose of collecting, calculating, or disseminating data. United States Department of Labor, Bureau of Labor Statistics, Standard Occupational Classification, at https://www.bls.gov/soc/." Dauzat v. U.S. Com'r of Soc. Sec., No. 1:13-CV-00953, 2014 WL 3764170, at *17 n.6 (W.D. La. July 30, 2014).

The DOT is one of five sources of which the Commissioner is required to take administrative notice to determine what "unskilled, sedentary, light, and medium jobs exist in the national economy." 20 CFR § 404.1566(d)(1) (2016). The SOC, O*NET, Occupational Requirements Survey, and other sources of occupational information on which Lewis relies are not included in that list. *Id.*; *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 446 (2d Cir. 2012) ("SOC codes . . . are not useful for disability proceedings because they do not contain the same detailed occupational information as DOT codes."); *Sanchez v. Saul*, No. EP-19-CV-00175-ATB, 2020 WL 51136, at *4 (W.D. Tex. Jan. 2, 2020) (holding that the Commissioner is not required to take notice of O*NET); *Sheridan v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-300-MAC-KFG, 2019 WL 6003297, at *9 (E.D. Tex. Aug. 30, 2019) (finding that the alleged discrepancy between the VE's testimony and the Occupational Requirements Survey did not require remand), *adopted by* No. 1:18-CV-300, 2019 WL 6002194 (E.D. Tex. Sept. 18, 2019). "Whether the DOT is outdated is not a determination this Court can make." *Treadaway v. Berryhill*, No. 4:17-CV-1093, 2018 WL 3862106, at *6 (S.D. Tex. Aug. 13, 2018).

The DOT aside, the ALJ's reliance on the VE's testimony is supported by substantial evidence. The VE testified that Lewis was able to find work as an office cleaner based on her expert experience. (Tr. 51, 133–34.) To the extent that the VE's testimony was inconsistent with any other sources on which Lewis relies, the

Commissioner has full discretion to resolve any conflicts in the evidence. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Agency policy requires the ALJ to resolve conflicts as to any inconsistency between the DOT and the VE's testimony, but not as to other sources of occupational information. *See* SSR 00-4p, 2000 WL 1898704, *2; *e.g.*, *Grimes v. Berryhill*, No. 3:16-CV-3280-BH, 2018 WL 1210533, at *11 (N.D. Tex. Mar. 8, 2018) (holding that SSR 00-4p "does not additionally require resolution of a 'possible conflict' with the [Occupational Outlook Handbook]"). Lewis has not shown that the VE's testimony about the job of office cleaner is inconsistent with the DOT or that the testimony was otherwise not supported by substantial evidence. Therefore, the ALJ did not err in relying on the VE's testimony.

(b) Office helper

Lewis also argues that the VE's testimony about the job as an office helper is inconsistent with the DOT. According to Lewis, the DOT describes the job as requiring driving cars and making outdoor mail deliveries, which someone with her RFC cannot do. (D.E. 15 at 13.) Lewis offered as an exhibit a document that appears to be a printout from the website of a company called SkillTRAN. (D.E. 15-1.) The document describes the job to include the duties of a courier or messenger as follows:

> Couriers and messengers move and distribute information, and small packages for businesses, institutions, and government agencies. . . . Couriers and messengers use trucks and vans for larger deliveries . . . Many drive vans or cars or ride motorcycles. A few travel by foot, especially in urban areas or when making deliveries nearby. In congested urban areas, messengers often

> use bicycles to make deliveries. Messenger or courier services usually employ the bicycle messengers.

(D.E. 15-1 at 9–10.)

None of the quoted language found in the "SkillTRAN" document that Lewis submitted is found in the DOT definition of "Office Helper." *See* DOT No. 239.567-010, "Office Helper" (4th ed. 1991), 1991 WL 672232 (listing mail delivery as only one of many other tasks that the job may require and making no mention of the requirement to drive a motor vehicle or to spend time outdoors.). The definition of "Office Helper" does make cross reference to the DOT definition of "Deliverer, Outside," DOT Code 230.663-010, which does require driving. *Id.* But that seems to be one of many job duties that an "Office Helper" may perform. The job does not require driving. The VE's testimony that Lewis's RFC allows her to perform the job is consistent with the DOT. Lewis's argument lacks merit.

(c) Mail clerk

Lewis argues that the job as a mail clerk is inconsistent with her RFC. She argues that the DOT's description for mail clerk requires a reasoning level of 3,[2] which demands more than what her RFC allows. (D.E. 15 at 11–12.) Specifically, Lewis argues that the reasoning level of 3 exceeds her limitation to do "simple, routine, repetitive tasks" and respond to "simple work-related decisions." (*Id.*; Tr. 46.)

_____

[2] *See* DOT No. 209.687-026 (4th ed. 1991).

The Court of Appeals for the Fifth Circuit has not addressed whether the potential conflict that Lewis raises constitutes a reversible error. *See Bushak v. Colvin*, No. CV M-13-462, 2015 WL 12533097, at *5 n.2 (S.D. Tex. Mar. 2, 2015) ("The Fifth Circuit has not addressed the precise issue of the Reasoning Development Levels, but it has spoken on the broader, but related, question of how to handle the conflicts between the VE's testimony and the DOT."), *adopted by* No. CV M-13-462, 2015 WL 12533098 (S.D. Tex. Mar. 20, 2015). District courts addressing this issue are split. *See Ruffin v. Colvin*, No. 3:16CV18-DPJ-FKB, 2017 WL 536549, at *4 (S.D. Miss. Feb. 8, 2017) (collecting cases).

The court need not reach this issue, because the ALJ's findings that Lewis can perform the jobs as office helper or office cleaner are supported by substantial evidence. *See Solis v. Colvin*, No. CV H-12-1848, 2013 WL 12106139, at *3 (S.D. Tex. May 22, 2013) (declining to reach a similar issue where the court has affirmed the ALJ's step-five findings about other jobs), *adopted by* No. CV H-12-1848, 2013 WL 12107660 (S.D. Tex. June 11, 2013).

Substantial evidence supports the ALJ's finding at step five. Lewis's arguments do not merit a reversal of the ALJ's decision.

## B. The Appeals Council's refusal to reverse the ALJ's decision does not warrant remand.

Lewis argues that the Appeals Council erred in denying her request for review. She argues the Appeals Council should have considered the two medical source

19

statements that she submitted with her appeal of the ALJ's September 5, 2018 decision. (D.E. 15 at 8–10.) The first medical source statement, dated August 13, 2018, is from Dr. Berno, who wrote that he prescribed Lewis an emotional support animal. (Tr. 58.) The Appeals Council considered the document but decided not to include it as an exhibit because the document did not "show a reasonable probability that it would change the outcome of the decision." (Tr. 2.)

The second medical source statement dated September 27, 2018, is from Dr. Garcia, who wrote that he treated Lewis twice during a six-month period. (Tr. 8–11.) In his statement, Dr. Garcia described Lewis's reported symptoms and noted that Lewis had seen improvements without side-effects from treatment by medication. (Tr. 8.) Dr. Garcia opined about Lewis's physical RFC and the effects of her pain symptoms. If accepted, Dr. Garcia's RFC assessment would have required a more limited RFC than what the ALJ found. (Tr. 9–11.) The Appeals Council found that Dr. Garcia's statement did not relate to the relevant period because it was authored after the ALJ's decision. (Tr. 2.)

Lewis argues that the ALJ's RFC assessment would have changed if the Appeals Council had directed the ALJ to the reconsider his decision in light of the newly submitted evidence.

When a claimant requests the Appeals Council to review an ALJ's decision, the Appeals Council "may deny a party's request for review or it may decide to

review a case and make a decision." 20 C.F.R. § 404.981 (2016); *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). Before the Appeals Council makes the decision to accept or deny the claimant's request for review, the Appeals Council reviews any additional evidence that is new, material, and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b) (2016). "The regulations do not require the Appeals Council to provide a discussion of the newly submitted evidence or give reasons for denying review." *Sun*, 793 F.3d at 511.

The Appeals Council's denial of a request for review "becomes part of the Commissioner's final decision . . . but the ALJ's decision remains binding." *Sun*, 793 F.3d at 511; 20 C.F.R. § 404.981 (2016). Where the newly submitted evidence is "not so significant as to require remand to the ALJ for additional consideration," the Appeals Council's denial of the claimant's request for review does not constitute reversible error. *See Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016). "[E]ven when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." *Hardman v. Colvin*, 820 F.3d 142, 151 (5th Cir. 2016) (citing *Sun*, 793 F.3d at 511–12). In other words, the question before the court is not whether there is a likelihood that

the ALJ would have made a different decision, but whether the decision is supported by substantial evidence in light of the evidence submitted to the Appeals Council.

In assessing the RFC, the ALJ reviewed the medical records covering the period between 2014–18, as well as Lewis's testimony and opinion evidence. (Tr. 45–50, 465–596, 604–730.) Although Dr. Garcia concluded that Lewis's RFC was more limited than what the ALJ found, the self-reported symptoms and medical records on which his conclusions were based are consistent with the medical records the ALJ already considered. Likewise, Dr. Berno's prescription of an emotional support animal does not create any conflict with the ALJ's mental RFC assessment. The court concludes that the evidence submitted to the Appeals Counsel does not undermine the ALJ's RFC assessment, which, as discussed above, is supported by substantial evidence. Remand is therefore not appropriate. *See Whitehead*, 820 F.3d at 780 (finding that "the newly submitted medical records largely confirm the evidence already contained in the record").

### 4. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's finding at each of the five sequential steps of the disability determination. The ALJ's decision is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Defendant's cross-motion for

summary judgment be **GRANTED**, and Plaintiff's motion for summary judgment be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on July  7 , 2020.

Peter Bray
United States Magistrate Judge